IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

EMANUEL DWAYNE PRIDE,

      Petitioner,

v.                                   CASE NO. 3:16-cv-403-RV-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## ORDER AND
## REPORT AND RECOMMENDATION

    Petitioner initiated this case by filing a *pro se* Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1). The Petition

stems from Petitioner's 2011 Okaloosa County convictions for several

controlled-substance offenses, for which he received a 30-year sentence

as a habitual felony offender. The Respondent has filed a response in

opposition to the petition, together with relevant portions of the state-court

record, and Petitioner has filed a reply. ECF Nos. 10, 19. Upon due

consideration of the pleadings and the state-court record, the undersigned

recommends that the Petition be denied. Petitioner's motion requesting the

status of this case, ECF No. 20, is **MOOT.**[1]

_____

[1] Because the Court may resolve the Petition on the basis of the record, the Court has

## I.  **State-Court Proceedings**

The underlying state-court proceedings are summarized in the Response, and Petitioner concedes that the summary is accurate.  ECF Nos. 10, 19.  On December 16, 2008, Petitioner was charged by information with one count of trafficking in cocaine (28 grams or more, less than 200 grams), one count of possession of cannabis, one count of resisting arrest without violence, one count of possession of drug paraphernalia, and two counts of possession of a controlled substance.  On October 4, 2011, Petitioner was convicted by a jury as charged.  On November 16, 2011, Petitioner was sentenced to 30 years of imprisonment on Count I, 11 months and 29 days for Counts II, III, and IV, and five years for Count V, each sentence to run concurrently.  On April 25, 2013, the First District Court of Appeal *per curiam* affirmed the judgment and sentence without a written opinion.  ECF No. 10.

Petitioner sought postconviction relief pursuant to Fla. R. Crim. P. 3.850, asserting eight grounds.  ECF No. 10-4 at 65-111.  The state court granted an evidentiary hearing on two grounds and summarily denied the others.  ECF No. 10-4 at 185-208.  Following the hearing, at which

---

determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

Petitioner was represented by counsel, the state court denied the remaining claims. *Id.* at 286-93. The First DCA affirmed *per curiam* without a written opinion. ECF No. 10-5 at 172.

The instant federal petition, which Respondent concedes is timely, followed. Petitioner asserts 16 claims for relief: (1) The trial court erred in denying his motion to suppress evidence obtained during a traffic stop; (2) The trial court erred in denying his motion to dismiss based on entrapment; (3) The trial court erred in excluding "reverse *Williams*-rule evidence"; (4) The trial court erred in admitting a confession that previously had been ruled inadmissible; (5) The statute under which he was convicted is unconstitutional; (6) Trial counsel was ineffective for failing to test evidence for fingerprints; (7) Trial counsel was ineffective for failing to move for production of a video recording of the traffic stop; (8) Trial counsel was ineffective for failing to depose or re-depose witnesses; (9) Trial counsel was ineffective for failing to adequately impeach a law enforcement witness; (10) Trial counsel was ineffective in failing to secure Petitioner's speedy-trial rights; (11) Trial counsel misadvised Petitioner regarding a plea offer; (12) Trial counsel failed to object to a violation of the rule of sequestration; (13) Trial counsel failed to adequately lay a foundation for the defense theory; (14) Trial counsel was ineffective for opening the door

to admission of Petitioner's previously suppressed confession; (15)

Cumulative errors of trial counsel; and (16) The State deprived him of a fair

collateral review process through fraud.  ECF No. 1.

## II.  Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state post-conviction motion.  28

U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate review

process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly

exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful

opportunity to "pass upon and correct alleged violations of its prisoners'

federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation

omitted).

When a petitioner fails to properly exhaust a federal claim in state

court, and it is obvious that the unexhausted claim would now be

procedurally barred under state law, the claim is procedurally defaulted.

4

*Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*. at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## III.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall

5

be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* ___ U.S. ___*,* 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*.   This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a

criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is---'that is because it was meant to be.'" *Id*. at 16 (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has

---

constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

## IV. <u>Discussion</u>

### A. *Claim (1): Denial of Motion to Suppress*

Petitioner contends that the trial court erred in denying his motion to suppress evidence (drugs and paraphernalia) that was seized following a traffic stop.  Petitioner argues that he was initially stopped for not having a license tag, but as the officer approached his car with a flashlight he observed a valid temporary tag in Petitioner's rear windshield.  Petitioner contends that the traffic stop should have terminated at that point, before the officer made contact with Petitioner and smelled marijuana.  ECF No. 1. Respondent argues that this claim is not cognizable pursuant to *Stone v. Powell,* 428 U.S. 465 (1976), because Petitioner's Fourth Amendment claim was fully and fairly litigated in the trial court.  ECF No. 10 at 7-8.

The trial court conducted an evidentiary hearing on Petitioner's motion to suppress the evidence seized during the traffic stop.  ECF No. 10-2 at 178-212.  Officer Ralph Dawe testified that he initiated the traffic stop because Petitioner's car did not have a tag.  As he approached the car with a flashlight, he saw a temporary tag improperly displayed in the car's rear window.  Under state law, the temporary tag was required to be

displayed where the permanent tag would normally be. Dawe made

contact with Petitioner and while doing so detected "a strong odor of

marijuana, as if it was recently burned, within the vehicle." *Id.* at 182.

Dawe had Petitioner exit the car and asked about the odor. Petitioner

claimed that he was smoking tobacco in a pipe which was left on the

driver's seat. Dawe testified that the pipe was in plain view and upon

inspection appeared to contain burned marijuana. Dawe informed

Petitioner that he had probable cause to search the car and requested

Petitioner's consent, but Petitioner refused. The subsequent search

revealed 36 grams of suspected crack cocaine and digital scales. ECF No.

10-1 at 67; 10-2 at 182-84.

Petitioner testified that the car he drove that night belonged to his

girlfriend and the temporary tag was placed by the car dealership from

whom the car was purchased. Petitioner testified that the pipe was not in

plain sight but was located in the car's armrest. Petitioner's counsel argued

that as soon as Dawe determined that Petitioner's tag was "fine" he should

have released Petitioner. *Id.* at 195-204. At the conclusion of the evidence

and argument, the trial court denied the motion. *Id.* at 212. Petitioner

unsuccessfully appealed the denial of the motion. ECF No. 10-3 at 315-18;

ECF No. 10-4 at 37.

9

The law is well settled that a federal court cannot entertain a violation of a habeas petitioner's Fourth Amendment rights if the petitioner had an opportunity for full and fair consideration of his claim in the State courts. *Stone,* 428 U.S. at 494; *Bradley v. Nagle,* 212 F.3d 559, 564 (11th Cir. 2000); *Mincey v. Head,* 206 F.3d 1106, 1125 (11th Cir. 2000). "[F]ull and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by higher state court." *Mincey,* 206 F.3d at 1126.

This record demonstrates that Petitioner received full and fair consideration of his Fourth Amendment claim, including an evidentiary hearing at which the State's witnesses were available for cross-examination, and full consideration by the appellate court.  Petitioner points to nothing in the record that would support a conclusion that he was not able to fully and fairly litigate this claim.  Any claim that the state court erred in denying the motion is insufficient to overcome the *Stone* bar. *See Mason v. Allen,* 605 F.3d 1114, 1120 (11th Cir.2010); *Swicegood v. Alabama,* 577 F.2d 1322, 1324 (5th Cir.1978) (holding that the *Stone* bar even applies when the state court erred in deciding the merits of a Fourth Amendment claim.).  Accordingly, pursuant to *Stone,* this claim is not cognizable and must be denied.

10

**B.   Claim (2): Denial of Motion to Dismiss**

Petitioner contends that the trial court erred in denying his motion to dismiss the charges based on an asserted due process violation and "objective entrapment".  Petitioner claims that he relied upon law enforcement not to bring charges against him under an agreement for Petitioner to "arrange" for the arrest of another drug dealer.  Petitioner argues that law enforcement breached their agreement.  ECF No. 1 at 5-6.

Under Florida law, an objective entrapment claim focuses on the conduct of law enforcement. *State v. Blanco,* 896 So.2d 900, 901 (Fla. 4th DCA 2005). The type of conduct held to violate due process is that which so offends decency or a sense of justice that judicial power may not be exercised to obtain a conviction. *See, e.g., Madera v. State,* 943 So.2d 960 (Fla. 4th DCA 2006) (confidential informant promised defendant an intimate relationship if the defendant would assist her in obtaining drugs); *State v. Glosson,* 462 So.2d 1082 (Fla.1985) (law enforcement entered into a contingency contract with informants to obtain convictions); *Cruz v. State,* 465 So.2d 516 (Fla.1985) (law enforcement officer posing as an inebriated person and displaying money from his pocket in high crime area); *State v. Williams,* 623 So.2d 462 (Fla.1993) (illegal manufacture of crack cocaine by law enforcement officials for use in reverse-sting operation).

11

The trial court held an evidentiary hearing on Petitioner's motion to dismiss.  ECF No. 10-2 at 80.  The evidence may be summarized as follows.  Following the traffic stop, Petitioner asked to see Sergeant Tom Matz.  Petitioner said that he wanted to cooperate in order to avoid arrest for possession of cocaine.  Petitioner testified that he believed if he cooperated he would not be charged for the cocaine.  Matz testified that he told Petitioner that he would not be arrested *that day* for the cocaine, but that Petitioner was not promised he would never be prosecuted for the cocaine and Matz in fact lacked the authority to make such a promise. Petitioner made inculpating statements and arranged for a controlled buy of cocaine from a dealer named James Peerless.  Petitioner assisted law enforcement in carrying out the sting.  Petitioner was released without arrest and, fearing for his safety, fled the state.  Petitioner was subsequently arrested after he was unable to give information on additional drug dealers and after failing to appear for a deposition in the case against Peerless.  ECF No. 10-1 at 175-76.

The trial court determined that the conduct of law enforcement did not rise to the level of "unconscionable" such that Petitioner was entitled to an objective entrapment defense.  In particular, the court found that Matz did not *intentionally* mislead Petitioner about the consequences of his decision

12

to assist law enforcement.  The court found instead that "the details of the agreement were unclear and [Petitioner] was reasonably mistaken about the effect of assisting and what he would receive in exchange."  *Id.* Because Matz's conduct was not unconscionable, the court denied the motion to dismiss.  The court did, however, find that Petitioner's statements to Matz should be suppressed because it was not clear that Matz informed Petitioner that he could still be arrested later.  *Id.* at 177.

The trial court plainly credited Matz's testimony over Petitioner's, and this Court defers to such credibility determinations on habeas review. Moreover, the trial court's decision rested exclusively on state law governing the objective entrapment defense.  Petitioner has not established that the trial court's decision was contrary to, or an unreasonable application of, clearly established federal law, or that the trial court made unreasonable factual findings.  Petitioner therefore is not entitled to federal habeas relief on this claim.

## C. *Claim (3):  Exclusion of "Reverse Williams-Rule" Evidence*

Petitioner contends that he was precluded from presenting his defense theory that the cocaine seized from the car belonged to Peerless. Petitioner presented evidence in the form of his testimony and that of his girlfriend that Peerless had driven the car immediately before Petitioner.

13

Petitioner sought to present evidence of Peerless' subsequent arranged drug buy, in order to show that Peerless was a drug dealer and therefore the drugs in Petitioner's car were more likely to belong to Peerless. The trial court determined that the proffered evidence amounted to propensity evidence, or so-called *Williams* Rule evidence, and therefore the evidence was irrelevant and inadmissible.[1]

Respondent contends that this claim is unexhausted and procedurally defaulted because Petitioner failed to raise it as a federal claim in his direct appeal. ECF No. 10 at 12.

To properly exhaust a federal claim, a petitioner must "fairly present" his federal claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' *federal* rights." *Baldwin*, 541 U.S. at 29

---

[1] Section 90.404(2)(a), Fla. Stat. (2004), which codified *Williams v. State*, 110 So.2d 654 (Fla. 1959), states in pertinent part:

> Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is **inadmissible when the evidence is relevant solely to prove bad character or propensity**.

(emphasis added). This evidentiary provision is generally called the "*Willams* Rule." *See* Charles W. Ehrhardt, Florida Evidence, §404.9 (2012 ed.). When a defendant attempts to admit *Williams* rule evidence, it is referred to as "reverse *Williams* Rule" evidence. *Id.*

(emphasis added).   A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record"; a reasonable reader should be able to understand the factual and legal bases for the federal claim.  *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005) (quotations and citations omitted).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin*, 541 U.S. at 32.

The only reference to federal law in Petitioner's direct appeal brief is his statement that the evidentiary ruling amounted to a violation of a "fundamental Sixth Amendment right".  *See* ECF No. 10-3 at 335. Assuming this lone reference is sufficient to preserve the issue as a federal claim, Petitioner is nevertheless not entitled to relief.  Federal habeas courts do not review state evidentiary rulings unless the alleged error is of such magnitude as to render the trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 71 (1991).  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*, *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

15

Petitioner has failed to show that the trial court's evidentiary ruling rendered his trial fundamentally unfair.  The defense theory was that the cocaine found in the car did not belong to Petitioner, and Petitioner presented evidence that Peerless had driven the car before Petitioner on the night he was stopped.  The trial court determined that Petitioner's proffered evidence that Peerless subsequently arrived for a drug buy with a large quantity of cocaine did not tend to prove that the cocaine found earlier in Petitioner's car belonged to Peerless.  ECF No. 10-3 at 202-04.  On this record, Petitioner has not shown that the trial court's ruling rendered his trial fundamentally unfair.  Petitioner is not entitled to federal habeas corpus relief on this claim.

**D.  *Claim (4): Admission of Inculpatory Statements***

Petitioner contends that the trial court erred in allowing the State to admit his inculpatory statements to Matz after finding that Petitioner "opened the door" to the evidence by testifying that he told law enforcement, including Matz, that the drugs were not his.  ECF No. 1.

The trial court initially suppressed Petitioner's statements to Matz due to concern that Petitioner did not fully understand that Matz did not promise he would never be charged for possession of the cocaine found in the car and therefore the statements were arguably involuntary.  ECF No. 10-3 at

209.  However, at trial Petitioner elected to testify in his own behalf.  He testified that the drugs recovered during the stop were not his and that he told law enforcement they were not his.  He also testified that he called Peerless and told him to come get his cocaine.  Petitioner admitted that the statements he made to Matz were voluntary.  The trial court concluded that Petitioner's direct testimony "eviscerated" the court's suppression ruling because Petitioner conceded that his statements to Matz were voluntary. The court therefore permitted the State to impeach Petitioner with Matz's testimony that Petitioner admitted he had purchased the cocaine that was seized from the car and that he called Peerless to bring more drugs, not to come pick up his drugs from the car, statements that were inconsistent with Petitioner's trial testimony on direct examination.  ECF No. 10-3 at 215-35.

Again, federal habeas courts do not review state evidentiary rulings unless the alleged error is of such magnitude as to render the trial fundamentally unfair. *See Estelle*, 502 U.S. at 71.  In this case, the trial court found that Petitioner, in his direct testimony, "didn't just push the door open, he knocked it off its hinges by what he said."  ECF No. 10-3 at 227. On this record, Petitioner's trial was not rendered fundamentally unfair when the trial court permitted the state to impeach Petitioner with his prior inconsistent statements to Matz.  Petitioner cannot demonstrate that the

state court's rejection of this claim was an unreasonable application of

clearly established federal law or that it was based on an unreasonable

factual finding.

## E.  *Claim (5): Constitutionality of Fla. Stat. § 893.13*

Petitioner contends that the Florida controlled-substance statutes are

unconstitutional because they impose strict liability by eliminating

knowledge of the illicit nature of the substance as an element of the

offense.  ECF No. 1 at 9.

This claim is foreclosed by *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d

1348 (11th Cir. 2012).  Following Florida Supreme Court cases holding that

the State was required to prove *mens rea* in controlled-substance cases,

and that the requisite *mens rea* includes both knowledge of the presence of

the controlled substance as well as knowledge of its illicit nature, the

Florida legislature enacted Fla. Stat. § 893.101, amending the Drug Abuse

Prevention and Control Act.  The amendment expressly provided that

knowledge of the illicit nature of the controlled substance was not an

element of the offense and created an affirmative defense of lack of

knowledge of the illicit nature of the substance.  The statute did not

eliminate the element of knowledge of the presence of the substance.  "In

short, the amendment did not completely eliminate *mens rea* for Florida

18

drug crimes: it converted one aspect of *mens rea* from an element of the crime into an affirmative defense."  *See Shelton*, 691 F.3d at 1350-51.

As the Eleventh Circuit explained, the Florida Supreme Court upheld the constitutionality of the amendment in *State v. Adkins*, ___ So.3d ___, 2012 WL 2848903 (Fla. July 12, 2012).  In *Adkins*, the court examined the history of criminal statutes that omitted a scienter requirement and were nonetheless constitutional as compared to those statutes where the lack of scienter rendered them unconstitutional. The court explained that § 893.101 fell within the former because 1) it punished an affirmative act— possessing or delivering controlled substances—rather than merely a passive activity, such as simply being a felon present in a city more than five days; and 2) the provision did not threaten to chill otherwise protected activities.

In *Shelton*, the Eleventh Circuit reviewed habeas claims in which the Petitioner challenged the constitutionality of Florida's strict liability drug statutes.  The Court held that *Adkins* was not an unreasonable application of federal law.  The district court in *Shelton* had determined that Fla. Stat. § 893.101 was facially unconstitutional because (1) its felony penalties are too harsh to allow omission of a *mens rea* requirement; (2) violations lead to substantial social stigma and so *mens rea* is required; and (3) it reaches

inherently innocent conduct without a *mens rea* component.  On appeal, the Eleventh Circuit found that the district court had failed to give the proper deference under the AEDPA to the state courts' adjudication of the issue.  Specifically, the Eleventh Circuit held that the Florida Supreme Court's adjudication of the facial constitutionality of § 893.101 on the merits in *Adkins* was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." *Shelton*, 691 F.3d at 1355.

The decision in *Shelton* is binding upon this Court.  Under *Shelton*, the state courts' rejection of Petitioner's claims regarding the constitutionality of the *mens rea* component of the Florida statute was not contrary to, or an unreasonable application of, Federal law.

**F.  *Claims (6)-(15): Ineffective Assistance of Counsel***

Petitioner asserts ten claims in which he argues that his trial counsel was ineffective.  The Court will address each in turn.

**<u>Claim Six</u>:**  Petitioner contends that his trial counsel was ineffective for failing to test a scale and baggies containing drugs for fingerprints.  ECF No. 1 at 10.  Petitioner claims that such testing would have provided "exculpatory value".  *Id.*

20

The state court summarily rejected this claim without an evidentiary hearing.  ECF No. 10-4 at 187-91.  The court observed that Petitioner's counsel cross-examined a FDLE witness about the lack of fingerprint testing in order to cast doubt upon whether Petitioner possessed the items. The court found that assuming the items would have tested negative for Petitioner's fingerprints, and even if counsel was somehow deficient for not seeking fingerprint analysis, Petitioner failed to establish a reasonable probability that the outcome of the trial would have been different.  The court observed that the State did not rely on fingerprint evidence to prosecute Petitioner.  The court further noted that in view of the fact that the items at issue were found in Petitioner's pocket and in the car that he was driving, his claim that counsel could have moved to dismiss the charges based on fingerprint testing was not well-taken.

Further, a motion to suppress based on lack of fingerprints would not have been proper.

Finally, the court concluded that the jury's finding of guilt could not have been based on fingerprint evidence because Petitioner's counsel elicited testimony that no such evidence was obtained.  Rather, the court pointed to the "overwhelming" evidence of Petitioner's guilt, which included testimony that Petitioner possessed cocaine, marijuana, other drugs, and

over $5000 cash in his pocket, and cocaine was found in the car of which

Petitioner was the sole occupant.  The jury also heard Matz's testimony

that Petitioner admitted buying the cocaine and told Matz the price he had

paid for it.  Because there was no reasonable probability that the jury would

have returned a different verdict but for counsel's alleged failure, Petitioner

failed to establish the second prong of *Strickland.*

Petitioner points to nothing in the record that contradicts the state

court's findings.  On this record, Petitioner has failed to show that the state

court's rejection of this ineffective assistance claim was so "lacking in

justification that there was an error . . . beyond any possibility for fairminded

disagreement."  *Burt*, 134 S.Ct. at 15-16.

**Claim Seven:**  Petitioner contends that counsel was ineffective for

failing to move for the production of "the existing in-car camera video tape

recording" that he contends was in the officer's car during the traffic stop.

Petitioner argues that the state court's rejection of this claim "is not in

compliance with constitutional precedent."  ECF No. 1 at 12.

Petitioner points to no evidence in the record that any video recording

of the traffic stop ever existed.  The State contended that no FWBPD cars

were equipped with video equipment at the time of Petitioner's arrest.  The

State later clarified that while *some* FWBPD vehicles had a VHS-based

recording system at that time, the "COBAN" recording systems that are

now widely utilized were not used at that time. The State verified that there

was *no* car video relating to Petitioner's case. ECF No. 10-4 at 180.

Petitioner claims that in a February 2002 trial on different charges,

Officer Holt testified that his car had video equipment and described how

the equipment functioned. ECF No. 19 at 24-25. Whether or not such

equipment and a video existed in a wholly unrelated case is simply not

relevant to Petitioner's claims regarding whether a video existed in the

proceeding underlying his habeas petition in this case.

Counsel cannot be deemed to have performed deficiently by failing to

seek out evidence that does not exist. Moreover, as the post-conviction

court found, a video would not have altered the outcome of the motion to

suppress, as it would not have refuted the independent basis for the search

of Petitioner's car, which was based on the officer detecting marijuana.

The video also would not contradict the testimony concerning Petitioner's

protestations of innocence and request for Sergeant Matz to respond to the

scene, because Petitioner testified to those facts himself at trial. The state

court concluded that "[c]onsequently, assuming a video recording existed

that showed [Petitioner] proclaiming his innocence and asking for Sergeant

Matz in order to prove that the drugs were not his, there is no reasonable

probability the jury would have returned a different verdict had such a video been provided to [Petitioner]."

On this record, Petitioner has failed to show that the state court's rejection of this ineffective assistance claim was so "'lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt*, 134 S.Ct. at 15-16.

**Claim Eight:**  Petitioner claims that his trial counsel was ineffective for failing to interview, question, depose, and call allegedly exculpatory witnesses.  Petitioner claims that he identified "several" witnesses who would have substantiated his defense theory, but counsel took no action. ECF No. 1 at 13-14.

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).  Petitioner has failed to even facially satisfy this "heavy showing" because he makes *no* allegations concerning who the witnesses are, what their testimony would have been, and how it would have affected the outcome of the trial.  *See* ECF No. 1 at 13-14.

The state court similarly rejected this claim as facially insufficient because Petitioner failed to specifically allege the harm resulting from counsel's alleged omission, identifying a specific evidentiary matter to which the failure to depose witnesses would relate.  ECF No. 10-4 at 195 (citing *Davis v. State,* 928 So.2d 1089, 1117 (Fla. 2005)).

As to one such witness, Officer Dawe, Petitioner's counsel did depose Dawe and Petitioner failed to show how a second deposition would have made a difference.  The court reviewed counsel's cross-examination of Dawe and found no deficiency.

As to another witness, Officer Sheffield, Petitioner claimed that Sheffield's testimony was at odds with Dawe's in some respects and that a deposition of Sheffield would have allowed further opportunity to impeach him.  The state court found that minor inconsistencies in Sheffield's and Dawe's testimony regarding details of Petitioner's arrest were not sufficiently material to undermine confidence in the verdict.

With respect to Officer Hart, who did not testify at trial, the state court found that Petitioner failed to establish that Hart's testimony would have had any effect on the outcome of the trial.  *Id.* at 196-99.

Petitioner points to nothing in the record that contradicts the state court's factual findings.  On this record, Petitioner has failed to show that the state court's rejection of this ineffective assistance claim was so "'lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt*, 134 S.Ct. at 15-16.

**Claim Nine:**  Petitioner claims that his trial counsel failed to "adequately impeach inconsistent statements of state witnesses," in violation of his constitutional rights.  ECF No. 1 at 15.  Again, this claim is facially insufficient because Petitioner does not explain exactly how counsel failed to impeach witnesses, or how the outcome of the trial would have been different but for such failure.

In his postconviction proceeding, Petitioner asserted that counsel failed to adequately impeach Officer Dawe "on the actual distance [he] allegedly ran and the resulting events that transpired," following the traffic stop.  ECF No. 10-4 at 199.  The state court rejected the claim, noting that counsel used Dawe's deposition testimony to impeach him regarding discrepancies in his testimony about the chase of Petitioner and the manner in which the chase ended.  Counsel also highlighted such discrepancies in his closing argument.  The state court found that counsel did, in fact, highlight discrepancies in Sheffield's and Dawe's testimony and

26

drew attention to the differing testimony in his closing argument.  The court therefore concluded that counsel's performance was not deficient, nor was there a reasonable probability that the outcome of the trial would have been difference had counsel conducted further inquiry.  *Id.* at 199-200.

Petitioner also claimed that his counsel should have used Sergeant Matz's testimony at the suppression hearing to impeach his trial testimony. Matz testified at the suppression hearing that he had faxed a subpoena to Petitioner's attorney on a date that was actually prior to the date Petitioner retained the attorney, and also testified that he had contacted Petitioner regarding his assistance in more "sting operations".  But Matz did not testify on either of those points at trial, and therefore the state court found there was no basis for counsel to impeach him with his prior testimony.  The court also pointed to the independent and substantial evidence of Petitioner's guilt in finding that the outcome of the trial would not have been different had counsel sought to impeach Matz with his suppression-hearing testimony.  *Id.* at 201-02.

Petitioner points to nothing in the record that undermines the state court's conclusion that counsel did not perform deficiently regarding his impeachment of witnesses, nor was there a reasonable probability that the outcome of the trial would have been different but for the alleged errors.

Accordingly, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was so "'lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S.Ct. at 15-16.

**Claim Ten:**  Petitioner argues that his counsel was ineffective for failing to file a motion to dismiss based on violation of the state's speedy trial laws, in violation of his state and federal constitutional rights.  ECF No. 1 at 16.

Respondent asserts that this claim is facially insufficient because, under Florida law, "[a] facially sufficient claim regarding a failure to file a notice of expiration of the speedy trial time period requires a specific factual basis to support a conclusion that the State could not have brought a defendant to trial within the recapture period."  ECF No. 10 at 30 (citing *Dexter v. State,* 837 So.2d 595, 596 (Fla. 2d DCA 2003); *see also Hammond v. State,* 34 So.3d 58, 60 (Fla. 4th DCA 2010)).

Florida criminal rules provide for a 175-day speedy trial time period, and a 15-day "recapture" period during which trial may be commenced.  Fla. R. Crim. P. 3.191(p).  In this case, the state court found that Petitioner failed to allege specific facts demonstrating that the State could not have brought him to trial within the 15-day recapture period, and therefore

28

Petitioner's claim was facially insufficient under state law.  Because Petitioner had been given two opportunities to amend his claims, the court declined to permit a third opportunity.  ECF No. 10-4 at 203.

To the extent that Petitioner seeks to assert a violation of Florida's speedy trial rules in this case, apart from his ineffective-assistance claim, "that type of claim is not cognizable on federal habeas review because it only involves state procedural rules rather than errors of federal constitutional dimension."  *Sneed v. Fla. Dept. of Corr.,* 496 Fed.Appx. 20, 25, 2012 WL 5417103, *4 (11th Cir. 2012).  Although ineffective assistance is a federal constitutional claim which federal courts consider in light of the clearly established rules of *Strickland,* when "the validity of the claim that [counsel] failed to assert is clearly a question of *state* law . . . we must defer to the state's construction of its own law."  *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir.1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (*superseded on other grounds*); *see also Callahan v. Campbell,* 427 F.3d 897, 932 (11th Cir.2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them[.]" (internal quotation and citation omitted)).  In the same vein, "[a] state's interpretation of its own laws or

29

rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary,* 967 F.2d 530, 535 (11th Cir.1992); *Hunt v. Tucker,* 93 F.3d 735, 737 (11th Cir.1996) (federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation).

Here, Petitioner facially failed to make a sufficient showing in the state court that his state speedy trial rights were violated, and therefore the state court declined to address the claim on the merits.  Because Petitioner failed to make a facially-sufficient showing in the state court, his speedy-trial claim is unexhausted, procedurally defaulted, and foreclosed from federal review.  Further, as an ineffective-assistance claim, Petitioner made no showing in the state court or in this Court that his speedy trial rights were violated such that counsel was ineffective for failing to assert them. This claim must be denied as unexhausted and procedurally defaulted.

**Claim Eleven:**  Petitioner contends that his counsel was ineffective for misadvising him about the State's plea offer.  Petitioner claims that counsel advised him not to accept the plea offer because they would win at trial and if they lost, he would win on appeal.  ECF No. 1 at 18.

As summarized in the state court's decision, Petitioner testified at the

evidentiary hearing that the State had presented a plea offer of "four years, with three years minimum mandatory." He testified that he rejected the offer and went to trial based on counsel's promises that he could "beat it on trial," or on appeal. Petitioner testified that counsel did not explain the penalties he faced, but he admitted that he knew he would likely be sentenced as a habitual felony offender. ECF No. 10-4 at 289.

Petitioner's attorney, Ted Stokes, directly contradicted Petitioner's claim. Stokes testified that he never made such promises to Petitioner and that he informed Petitioner of the consequences of entering a plea versus going to trial. Stokes testified that the trial court had also informed Petitioner that if he went to trial he faced a sentence of 30 years to life. Stokes testified that he specifically discussed the terms of the State's offer with Petitioner, and he recalled that Petitioner was "well versed" in the law and facts of the case. Petitioner decided to reject the offer. *Id.* at 289.

The state postconviction court found that Stokes' testimony was credible and that he did not perform deficiently regarding the State's plea offer. The court found that even if counsel did not inform Petitioner of the maximum penalties he faced, the trial court had done so. Petitioner's rejection of the plea offer was knowing and voluntary and his own decision. *Id.* at 289-90.

This Court defers to the state court's credibility determinations. On this record, there is no basis for the Court to conclude that Petitioner's counsel performed deficiently with respect to the State's plea offer. Petitioner has failed to show that the state court's rejection of this ineffective assistance claim was so "'lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S.Ct. at 15-16.

**Claim Twelve:** Petitioner contends that his constitutional rights were violated when his counsel failed to object to a violation of the rule of sequestration. ECF No. 1 at 19. Petitioner has alleged no facts showing how the alleged violation occurred, how his rights were violated as a result, or how this claim entitles him to habeas relief. *See id.*

Petitioner's allegations in his postconviction proceeding were similarly deficient. Petitioner alleged that a defense witness, Sonja Boyer, informed Petitioner and his counsel that State witnesses were speaking with each other about the case. Petitioner alleged that he asked his counsel to bring the matter to the court's attention, but counsel failed to do so. ECF No. 10-4 at 204-05.

The postconviction court rejected this claim as facially insufficient. Under state law "[a] summary or conclusory allegation is insufficient to

require the trial court to examine the specific allegations against the record." *Id.* (quoting *Pagan v. State,* 29 So.3d 938, 955 (Fla. 2009)). Further, "a defendant alleging an ineffective assistance of counsel claim must set out in his or her motion sufficient alleged facts which, if proven, would establish the two prongs necessary for relief based upon ineffectiveness as outlined in *Strickland*." *Id.* (quoting *Nelson v. State,* 875 So. 2d 579, 583 (Fla. 2004)). Because Petitioner failed to allege with any specificity which testimony was affected by the alleged violation of the rule of sequestration and had been given two opportunities to amend his claims, the postconviction court declined to address the claim on the merits.

On this record, the Court finds that Petitioner's claim is unexhausted, procedurally defaulted, and foreclosed from federal review. Therefore, this claim must be denied.

**Claim Thirteen:** Petitioner broadly asserts that his trial counsel failed "to adequately lay a foundation for the theory of defense," in violation of Petitioner's rights. ECF No. 1 at 20-21. This claim is so vague that it does not present a cognizable basis for habeas review. It is not the Court's obligation to sift through the record to identify facts that support this assertion.

In his state postconviction proceeding, Petitioner claimed that his

counsel failed to lay a foundation for the theory of the defense by researching Florida law regarding the placement of temporary tags. Petitioner claimed that the law in effect at the time of his stop permitted the tag to be displayed in the rear window.  The court rejected the claim as meritless because the statute was amended in May 2008, before Petitioner's July 3, 2008, stop, to provide that temporary tags must be displayed in the license plate bracket.  ECF No. 10-4 at 205-06 (citing Fla. Stat. § 320.131).  The court concluded that counsel cannot be ineffective for failing to make the meritless argument that Petitioner suggested.  *Id.* at 206.

Petitioner further claimed that counsel was ineffective for failing to develop Petitioner's "original purpose" in contacting the drug supplier, Peerless.  Petitioner claims that he originally called Peerless to come pick up the cocaine that was found in Petitioner's car, and that Matz said he would believe that the cocaine did not belong to Petitioner if he could get Peerless to bring a larger quantity of cocaine to the "sting" site.  *Id.* at 206. The state court determined that this claim was facially insufficient because Petitioner failed to explain how counsel could have developed his "original purpose" for calling Peerless or how the outcome of the trial was prejudiced by counsel's asserted deficiency.  Petitioner had been given two

34

opportunities to state a facially sufficient claim, and therefore the court denied the claim as insufficient.

Petitioner makes no argument that the state court erred in arriving at either of these conclusions.  To the extent Petitioner claims counsel erred in failing to argue that the temporary tag law did not apply, this Court defers to the state court's interpretation of state law and likewise finds that this claim is meritless.  To the extent Petitioner claims that counsel erred in failing to develop his reason for contacting Peerless, the Court finds that this claim is unexhausted, procedurally defaulted, and foreclosed from federal habeas review.

In sum, Petitioner has failed to show that the state court's rejection of this claim was so "'lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt*, 134 S.Ct. at 15-16.

**Claim Fourteen:**  Petitioner claims that his counsel was ineffective for "opening the door" that allowed him to be impeached with his previously-suppressed statements to Matz in which he told Matz how much he had paid to Peerless for the cocaine that was found in the car.  ECF No. 1 at 22.

At the postconviction evidentiary hearing, Stokes testified that he extensively prepared Petitioner to testify at trial, and that it was Petitioner's

35

decision to testify.  However, on cross-examination by the State at trial
Petitioner testified that he voluntarily spoke to Matz and thus opened the
door for admission of his suppressed statements, which had only been
suppressed because of the trial court's finding of involuntariness. Stokes
testified that he "did not anticipate that as an issue."  ECF No. 10-4 at 291-
92.

The postconviction court noted that the evidence of guilt was
overwhelming, and had Petitioner elected not to testify there was no
reasonable probability that the outcome of the trial would have been
different.  The court further found that even if Petitioner had testified without
opening the door to the suppressed statements, or had counsel otherwise
prevented Matz from testifying about Petitioner's statements, there was no
reasonable probability that the outcome would have been different due to
the overwhelming evidence of guilt.

In view of the evidence presented at trial, the state court's conclusion
is reasonable.  On this record, Petitioner has failed to show that the state
court's rejection of this claim was so "'lacking in justification that there was
an error . . . beyond any possibility for fairminded disagreement.'"  *Burt*,
134 S.Ct. at 15-16.

**Claim Fifteen:**  Petitioner claims that the "cumulative effect of counsel's multiple errors collectively" violate his constitutional rights.  ECF No. 1 at 23.

In rejecting a similar "cumulative error" argument made by a § 2254 petitioner, the Eleventh Circuit has stated that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim."  *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x. 560, 564 (11th Cir. 2009) (*per curiam*). The *Forrest* panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564–65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

As previously discussed, Petitioner has not demonstrated any of his trial counsel's alleged errors, considered alone, rose to the level of ineffective assistance.  Therefore, there are no errors to accumulate.

Petitioner was not denied effective assistance of counsel, and he has not demonstrated his trial was fundamentally unfair. *Walls v. McNeil*, No. 3:06-cv-237-MCR, 2009 WL 3187066, at *30–*31 (N.D. Fla. Sept. 30, 2009) ("As previously discussed, none of the alleged errors of trial counsel, considered alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair.").

Therefore, this claim presents no basis for federal habeas corpus relief.

**Claim Sixteen:** Petitioner conclusionally alleges that the State deprived him of a fair criminal collateral review process "through the commission of fraud, misrepresentation, and/or, other unlawful misconduct," in violation of his rights. ECF No. 1 at 25.

Petitioner's conclusional claims do not state a cognizable basis for habeas corpus relief. Moreover, asserted constitutional errors in postconviction proceedings are not cognizable on federal habeas corpus review. *See Alston v. Dep't of Corr. Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010) (postconviction court's decision that petitioner was competent to waive his postconviction proceedings and that waiver was valid was not

38

cognizable on federal habeas review because claim did not implicate the legality of detention); *Carroll v. Sec'y, Dept. of Corr.*, 574 F.3d 1354, 1366 (11th Cir. 2009) (claim that state court violated due process when it summarily denied postconviction claim without an evidentiary hearing did not state cognizable federal habeas claim); *Quince v. Crosby*, 360 F.2d 1259, 1261-62 (11th Cir. 2004) ("while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (claim that errors in 3.850 proceeding violated due process did not state a claim for habeas relief because the claim "[went] to issues unrelated to the cause of petitioner's detention.").

Here, Petitioner's claims alleging errors in his postconviction proceeding do not implicate the cause of his detention. These claims are not cognizable on federal habeas review.

## V. Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §

2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI. <u>Conclusion</u>

Petitioner's "motion for status quo", ECF No. 20, is **MOOT.**

For the foregoing reasons, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 9th day of August 2019.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

40

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**